IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CR-22-40-D |
| | ) |
| WILLIAM SHAWN KAYS, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Before the Court is Defendant's Motion to Declare 18 U.S.C. § 922(g)(8) and § 922(n) Unconstitutional Under the Second Amendment and to Dismiss the Superseding Indictment [Doc. No. 52]. The government has filed its Response [Doc. No. 61], and the parties have filed supplemental briefs to address the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See* Def.'s Suppl. Br. [Doc. No. 78]; Pl.'s Suppl. Br. [Doc. No. 79]; Def.'s Reply Br. [Doc. No. 82]. Upon consideration, the Court rules on the Motion as follows.

**Background**

Defendant stands charged in a three-count Superseding Indictment of: 1) illegal receipt of a firearm by a person under indictment, in violation of 18 U.S.C. § 922(n); 2) prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(8); and 3) prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(8). Defendant seeks a determination that both § 922(n) and § 922(g)(8) are facially unconstitutional because they infringe on an individual's fundamental right under the

Second Amendment to possess and carry firearms, and if successful, he seeks a dismissal of the charges against him under an unconstitutional statute.[1] Defendant bases his Second Amendment challenge on *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and now *Bruen*. Relying on dicta in both *Bruen* and *Heller*, the government contends that neither § 922(g)(8), nor § 922(n), violate the Second Amendment and thus Defendant can lawfully be prosecuted for violating the respective statutes.

## Standard of Decision

Rule 12(b)(3) of the Federal Rules of Criminal Procedure permits a defendant to challenge an indictment before trial where a "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010). "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006). Here, Defendant does not dispute that the Indictment states an offense under § 922(n) and § 922(g)(8), but instead challenges the statutes as unconstitutional on their face. Each issue can properly be decided as a matter of law before trial.

---

[1] Defendant also lodges an as-applied challenge with respect to § 922(g)(8), claiming that the factual basis of the protective order did not involve "injuring, abusing, sexually assaulting, molesting, harassing, stalking, [or] threatening." [Doc. No. 78] at p. 12. However, an as-applied challenge to the constitutionality of a statute generally cannot be raised in a pretrial motion to dismiss since it requires an examination of the facts of the case. *See United States v. Pope*, 613 F.3d 1255, 1260-61 (10th Cir. 2010).

**Discussion**

In 2008, the Supreme Court recognized an individual right under the Second Amendment to possess firearms in common use, such as handguns, for traditionally lawful purposes, such as self-defense within the home. *See Heller*, 554 U.S. at 592, 627. The Court found in *McDonald* that this right is fundamental and applies to the states under the Due Process Clause of the Fourteenth Amendment. *See McDonald*, 561 U.S. at 778.

Under those decisions, the Tenth Circuit has consistently upheld the constitutionality of § 922(g) generally and subsection (8) specifically. *See United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010) (§ 922(g)(8)); *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012) (§ 922(g)(5)); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (§ 922(g)(1)); *In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009) (unpublished) (§ 922(g)(9)); *United States v. Richard*, 350 F. App'x 252, 260-61 (10th Cir. 2009) (unpublished) (§ 922(g)(3)).[2] But *Bruen* constitutes an intervening decision that relieves this Court of its obligation to follow Tenth Circuit authority that otherwise would bind district courts within this circuit. *United States v. Doe*, 865 F.3d 1295, 1298-99 (10th Cir. 2017) (circuit precedent is no longer binding "when the Supreme Court issues an intervening decision that is contrary to or invalidates our previous analysis") (internal quotation omitted)).

---

[2] Post-*Heller*, no appellate court has assessed the constitutionality of § 922(n). Prior to *Bruen*, several lower courts held that § 922(n) is constitutional on its face. *See, e.g., United States v. Call*, 874 F.Supp.2d 969, 978-79 (D. Nev. 2012); *United States v. Laurent*, 861 F.Supp.2d 71, 105 (E.D.N.Y. 2011); *United States v. Love*, No. 20-20327, 2021 WL 5758940, at *2 (E.D. Mich. Dec. 3, 2021).

After *Heller*, most federal appellate courts applied a two-step framework using a means-end analysis to determine the constitutionality of restrictions on Second Amendment rights. The Tenth Circuit had employed this framework in recent cases. *See Reese*, 627 F.3d at 800-04; *Huitron-Guizar*, 678 F.3d at 1169. Earlier, it had simply followed dictum in *Heller* indicating that statutes such as § 922(g) were unaffected by the holding of that case. *See McCane*, 573 F.3d at 1047; *In re United States*, 578 F.3d at 1219-20; *see also McCane*, 573 F.3d at 1047-48 (Tymkovich, J. concurring) (expressing concern about "possible tension between *Heller*'s dictum and its underlying holding").[3] In *Bruen*, the Supreme Court rejected means-end scrutiny and abrogated decisions that employed it. *See Bruen*, 142 S. Ct. at 2126-27. The Supreme Court adopted the following standard for applying the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation.

*Id.* at 2129-30.

---

[3] The Supreme Court reiterated *Heller*'s dictum in *McDonald*, 561 U.S. at 786 (citation to *Heller* omitted):

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." We repeat those assurances here.

Turning to the issues presented by Defendant's Motion, the Court must determine whether the Second Amendment's plain text covers Defendant's conduct and, if so, whether the government has demonstrated that both § 922(g)(8) and § 922(n) are consistent with the United States' historical tradition of firearm regulation.

### I. Defendant's Conduct is Covered by the Second Amendment's Plain Text.

The Second Amendment "protect[s] the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" and "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122. Based on the reference to law-abiding citizens, the government argues that the Second Amendment rights recognized in *Heller* and *Bruen* do not apply to individuals under indictment. *See* [Doc. No. 79] at 5-6. This argument ignores the Supreme Court's emphasis on an individual's conduct, rather than status, to decide if Second Amendment protection exists. This Court declines to read into *Bruen* a qualification that Second Amendment rights belong only to individuals who have not been accused of violating any laws.[4] Thus, Defendant's conduct is covered by the Second Amendment's plain text.

### II. United States' Historical Tradition of Firearm Regulation

Having concluded that Defendant's conduct is covered by the Second Amendment's plain text, the Court must next determine whether the government has demonstrated that

---

[4] Although the government fails to address whether the Second Amendment protects individuals subject to a domestic protective order, the Court reiterates that an individual's Second Amendment rights are not predicated on their classification, but rather, their conduct.

both § 922(g)(8) and § 922(n) are consistent with the United States' historical tradition of firearm regulation.

*Bruen* teaches that the "historical inquiry that courts must conduct will often involve reasoning by analogy" and "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relevantly similar." *Bruen*, 142 S. Ct. at 2132 (internal citation omitted). The Court identified "two metrics" that would render regulations relevantly similar under the Second Amendment: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33.

The government attempts to establish that each statute is consistent with a historical tradition of firearm regulation by using broad arguments that do not directly address a history of firearm possession by those subject to a protective order, or firearm receipt by those under indictment. The government instead analogizes § 922(g)(8) and § 922(n) to the surety laws discussed in *Bruen* and relies on restrictions historically imposed on felons and the mentally ill. *See* [Doc. No. 79] at p. 3-6.

### a. Section 922(g)(8)

In the wake of *Bruen*, this Court declined to hold that 18 U.S.C. § 922(g)(9)—which prohibits any person convicted of a "misdemeanor crime of domestic violence" from possessing a firearm—violated the Second Amendment. *See United States v. Jackson*, No. CR-22-59, 2022 WL 3582504, at *3 (W.D. Okla. Aug. 19, 2022). Section 922(g)(8) also concerns domestic violence. It prohibits any person who is subject to a domestic protective

order from possessing a firearm in or affecting interstate commerce, even for a lawful purpose such as self-defense.

Section 922(g)(8) and (9) are similar. Indeed, as noted by the Tenth Circuit, "both [§ 922(g)(8) and § 922(g)(9)] prohibit the possession of firearms by narrow classes of persons who, based on their past behavior, are more likely to engage in domestic violence." *See Reese*, 627 F.3d at 802.

As this Court recognized in *Jackson*, commentary from legal scholars acknowledges the paucity of evidence that American traditions reached within the home to interfere with domestic relationships, particularly the marital relationship. *See, e.g.,* Joseph Blocher, *Domestic Violence and the Home-Centric Second Amendment*, 27 Duke J. of Gender Law & Policy 45, 55-56 (2020) ("In the context of domestic violence prohibitions, the historical record is problematic to say the least."); Carolyn B. Ramsey, *Firearms in the Family*, 78 Ohio St. L.J. 1257, 1301 (2017) ("Historical support for the exclusion of domestic violence offenders from Second Amendment protection appears rather thin.").

Despite faint historical support of regulations prohibiting domestic violence offenders from the Second Amendment's protections, in *Jackson*, the Court concluded that the government satisfied its burden to justify the firearm regulation of § 922(g)(9), as domestic violence misdemeanants can logically be viewed as "'relevantly similar to felons' who should be 'denied weapons for the same reasons.'" *Jackson*, 2022 WL 3582504, at *3 (quoting Blocher, *supra*, at 56). Indeed, if one accepts the dictum in *Heller* on which courts have repeatedly relied, a "longstanding prohibition" supported by historical tradition is one "on the possession of firearms by felons." *See Heller*, 554 U.S. at 626.

Using the same reasoning, the Court arrives at an identical conclusion here. Section 922(g)(8) limits the Second Amendment rights of a person who is subject to a court order that "restrains such person from harassing, stalking, or threatening an intimate partner of such person . . . or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury." 18 U.S.C. § 922(g)(8)(B). Although the historical record regarding domestic violence prohibitions is problematic, that does not prevent the government from carrying its burden here. Those subject to a domestic violence protective order should logically be denied weapons for the same reasons that domestic violence misdemeanants are. Like § 922(g)(9), § 922(g)(8)'s prohibition is consistent with the longstanding and historical prohibition on the possession of firearms by felons. *See Heller*, 554 U.S. at 626.

Therefore, the Court finds that the government's reliance on general historical tradition is sufficient to satisfy its burden to justify the firearm regulation of § 922(g)(8) and thus declines to hold that § 922(g)(8) violates the Second Amendment.

### b. Section 922(n)

Section 922(n) prohibits any person who is under indictment for a felony from receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922(n). As with § 922(g)(8), historical support for excluding those under indictment from the protections of the Second Amendment is limited—the first federal statute restricting an indicted individual's access to firearms was not enacted until 1938. *See* Federal Firearms Act of 1938, Pub. L. No. 75-850, § 2(e), 52 Stat. 1250, 1251 (repealed); *see also Laurent*, 861 F.Supp.2d at 82.

But as the government points out, a historical analogue to § 922(n) does exist in the form of the surety statutes discussed in *Bruen*. These statutes can be traced to the mid-19th century. *See Bruen*, 142 S. Ct. at 2148 ("In the mid-19th century, many jurisdictions began adopting surety statutes"). Although these laws were not "bans on public carry," they did restrict it. *Id.* at 2149. For instance, in 1836, Massachusetts enacted a law which "required any person who was reasonably likely to breach the peace . . . to post a bond before publicly carrying a firearm." *Id.* at 2148 (internal citation omitted). From 1838 to 1871, "nine other jurisdictions adopted variants of the Massachusetts law." *Id.*

The Court in *Bruen* declined to hold that these surety laws represented a well-established historical analogue to the New York law at issue.[5] *Id.* at 2148-50. "[T]he surety statutes *presumed* that individuals had a right to public carry that could be burdened only if another could make out a specific showing of reasonable cause to fear an injury, or breach of the peace," "New York presumes that individuals have *no* public carry right without a showing of heightened need." *Id.* at 2148 (internal quotation omitted). The surety laws restricted an individual's carrying of arms "only when 'attended with circumstances giving just reason to fear that he purposes to make an unlawful use of them.'" *Id.* (quoting William Rawle, A View of the Constitution of the United States of America 126 (2d ed. 1829).

Unlike the New York law that was struck down in *Bruen*, § 922(n) does not restrict the Second Amendment rights of every citizen. Like the surety statutes, § 922(n) is faithful

---

[5] The New York law at issue in *Bruen* required an individual to secure a license to carry a firearm outside his or her home or place of business for self-defense. Securing this license required the applicant to prove that proper cause existed. *See Bruen*, 142 S. Ct. at 2123.

9

to the notion that individuals have a right to bear arms. The surety statutes generally provided that an individual's Second Amendment right "could be burdened only if another could make out a specific showing of reasonable cause to fear an injury, or breach of the peace." *Bruen*, 142 S. Ct. at 2148 (internal citation omitted). Similarly, § 922(n) only burdens an individual's Second Amendment rights "during the pendency of the indictment, a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or others." *United States v. Khatib*, No. 12-CR-190, 2012 WL 608682, at *4 (E.D. Wis. Dec. 6, 2012)*; see also Laurent*, 861 F.Supp.2d at 102 ("[I]f the individual only received a gun *after* indictment, this conduct raises the suspicion that his purpose is not self-defense in the home, but further crime") (emphasis added).

Even so, the restriction imposed by § 922(n) is narrow. In fact, § 922(n) is arguably less restrictive than the surety laws discussed, as the surety laws required those "reasonably accused" to "show a special need in order to avoid posting a bond" before carrying. *Bruen*, 142 S. Ct. at 2149. Section 922(n) does not prevent an individual from publicly carrying; it simply limits an individual's right to receive a firearm during the pendency of an indictment.

The Court thus finds that the surety laws discussed in *Bruen* are proper historical analogues for § 922(n). The government's reliance on these surety laws is sufficient to satisfy its burden to justify the firearm regulation of § 922(n), and the Court declines to hold that § 922(n) violates the Second Amendment.

## Conclusion

Under the circumstances currently presented, where the effect of the Supreme Court's decision in *Bruen* on longstanding criminal prohibitions such as § 922(g) and § 922(n) remains unclear, this Court holds that neither § 922(g)(8), nor § 922(n), violates the Second Amendment. By his Motion, Defendant has preserved this issue for future decision by higher courts.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Declare 18 U.S.C. § 922(g)(8) and § 922(n) Unconstitutional Under the Second Amendment and to Dismiss the Indictment [Doc. No. 52] is **DENIED**.

**IT IS SO ORDERED** this 29th day of August, 2022.

TIMOTHY D. DeGIUSTI
Chief United States District Judge